**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **SAMUEL MALACHI MARTINEZ,** | § | |
| **TDCJ No. 01147601,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:18-cv-00105-M-BP** |
| | § | **(Consolidated with** |
| **GRACE MATHAPATHI,** *et al.*, | § | **No. 7:18- cv-00145-M-BP)** |
| | § | |
| **Defendants.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

Before the Court are Plaintiff's claims filed under 42 U.SC. § 1983 against two prison healthcare workers for alleged indifference to his serious medical needs and for retaliation. (ECF Nos. 1, 15) (collectively, the "complaints"). The case was automatically referred to the undersigned for decisions on non-dispositive matters and for findings and recommendations on dispositive matters pursuant to Special Order No. 3-251. (*See* ECF No. 3). After considering the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **DISMISS** the complaints **with prejudice** under 28 U.S.C. § 1915.

## BACKGROUND

Plaintiff Samuel Malachi Martinez ("Martinez") is a prisoner confined in the James V. Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas. (ECF Nos. 1; 15). He brings this lawsuit *pro se* and *in forma pauperis* against Grace Mathapathi ("Mathapathi"), a registered nurse practitioner employed by Texas Tech University Health Sciences Center, and Dana C. Cruz ("Cruz"), a temporary healthcare provider. (ECF Nos. 1 at 5;

15 at 5) (Martinez's Amended Complaint refers to Dona Cruz. Ms. Cruz's legal name is Dana C. Cruz. (ECF No. 21-1 at 8)). Martinez alleges that the Defendants acted deliberately indifferent to his serious medical needs. (ECF Nos. 1 at 5; 15 at 9; 16 at 6). He also claims Mathapathi refused to restart his seizure medication in retaliation for his filing a grievance against her (ECF No. 1 at 3), and that Cruz "continu[ed] up the retaliation that Mathapathi had started." (ECF No. 15 at 6). Martinez requests the Court to order his seizure medication be restarted and to award him compensatory damages of $75,000, punitive damages of $75,000, nominal damages of $5,000, exemplary damages of $80,000, attorney's fees, and costs of $800. (ECF Nos. 1 at 6; 15 at 6).

This case was consolidated with Cause No. 7:18-cv-00145-M-BP on September 20, 2018. (ECF No. 9). On September 24, 2018, the Court granted Martinez leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and withheld service of process pending screening. (ECF No. 12). On October 5, 2018, the Court issued a questionnaire to Martinez for further clarification of his claims. (ECF No. 14). Among other inquiries, the questionnaire asked Martinez to state all facts known to him establishing how Mathapathi and Cruz violated his civil rights and were deliberately indifferent to his medical needs. (*Id.*).

Martinez responded to the questionnaire on October 22, 2018. (ECF No. 16). Martinez claims a history of seizure symptoms since he was a child. (*Id.* at 2). He alleges TDCJ personnel first diagnosed him with a seizure disorder after he arrived at the Byrd Unit in 2003 and underwent an electrocardiogram. (*Id.* at 2–3). Since then, he has taken seizure medication. (*Id.* at 3). Martinez claims that the alleged retaliation began when he and Mathapathi had a disagreement over his treatment for high cholesterol. (ECF Nos. 1 at 5; 16 at 11). Martinez refused to take his cholesterol medication or see Mathapathi about it. (*Id.*). Martinez asserts that Mathapathi harassed him so much about not taking the medication that he threatened Mathapathi with legal action. (ECF Nos.

2

1 at 5; 16 at 7). It was then, on or about May 24, 2018, that Mathapathi discontinued his seizure medication. (ECF No. 1 at 5). Six days later, after filing a step one grievance against Mathapathi, Martinez had an unwitnessed seizure, after which Mathapathi reauthorized his seizure medication. (*Id.*).

Unrelated to his seizure symptoms, Martinez started having an allergic reaction to "something" on June 1, 2018. (*Id.*). He claims that Mathapathi told him to stop taking and using "things" and then to slowly reintroduce them to determine the cause of his allergic reaction. (*Id.*). During this period of trial and error, Mathapathi drew Martinez's blood to test its "medication level." (*Id.*). Apparently, the concentration of seizure medication in Martinez's blood was too low because Mathapathi discontinued his seizure medication, and on July 10, 2018, she refused to restart his medication even after Martinez offered to show her he was taking the medication. (*Id.*).

Two weeks later on July 23, 2018, Martinez claims he sought medical treatment from Cruz for "dizziness, floating vessel in [his] eyesight, and nausia [sic]." (ECF Nos. 15 at 6; 16 at 8). He alleges these symptoms were a result of two seizures he had on July 14 and July 16, 2018. (ECF No. 16 at 8). After reviewing his medical notes, which included Mathapathi's order not to administer his seizure medication, Cruz allegedly told Martinez that she was not going to restart his seizure medication and that she did not believe he had a medical problem. (ECF Nos. 15 at 6; 16 at 8). After an argument, she allegedly refused to treat him for his current condition and terminated his examination. (ECF No. 15 at 6; 16 at 12).

## LEGAL STANDARD

A district court "shall dismiss" a case brought *in forma pauperis* "at any time if the court determines that . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

such relief." 28 U.S.C. § 1915(e)(2). To aid the court in determining whether it should dismiss an *in forma pauperis* complaint, the United States Court of Appeals for the Fifth Circuit has approved the use of questionnaires and evidentiary hearings. *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). Responses to these questionnaires and hearings become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). Further, the use of a *Martinez* report in cases involving claims of deliberate indifference to serious medical needs may be used as an administrative tool to assist a court in conducting a frivolity screening under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292–93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* However, if the court determines that the plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326–27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

## ANALYSIS

Martinez sued Mathapathi and Cruz for violation of his civil rights under the Eighth Amendment's prohibition against cruel and unusual punishment for discontinuing his seizure medication and for retaliation. As part of screening the case under 28 U.S.C. § 1915, the Court ordered the State of Texas to prepare a *Martinez* report ("Report"), recognizing that "[a] *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334–35 (10th Cir. 1992)). The Court has reviewed

Martinez's Original Complaint (ECF No. 1), Amended Complaint (ECF No. 15), Verified Responses to the Court's Questionnaire (ECF No. 16), the Report (ECF No. 21), and Martinez's Response to the Report (ECF No. 24).

## I.    Deliberate Indifference

Title 42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment because its prohibition against cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle*, 429 U.S. at 104 (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)).

To prove an Eighth Amendment violation, a prisoner must (1) "prove objective exposure to a substantial risk of serious harm" and (2) "show that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). Deliberate indifference to medical needs only amounts to an Eighth Amendment violation if the prisoner's needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–104). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. "[A] prison official acts with deliberate indifference 'only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

"Deliberate indifference is an extremely high standard to meet. . . . [T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

### A.    Objectively serious condition

Under the objective prong, Martinez alleged he was diagnosed with a seizure disorder when he was young; he was prescribed seizure medication while at the Byrd Unit in 2003; and that he had been at the Allred Unit for a month and eleven days before Mathapathi discontinued his seizure medication for no other reason than their argument over his cholesterol treatment. (ECF No. 16). Although Martinez did not present any medical records substantiating his seizure diagnosis, his complaints sufficiently allege he was diagnosed with seizures when he first arrived at the Byrd Unit in 2003. (*Id.* at 3). Further, the Affidavit of Benjamin J. Leeah, M.D. and medical records contained in the Report confirm that Martinez had been prescribed seizure medication before and after his transfer to the Allred Unit. (ECF No. 21-1 at 3–4). Thus, at this stage, Martinez has pleaded enough facts indicating that a physician recommended medical treatment for his seizure condition.

### B.    Subjective deliberate indifference

Martinez alleges that because Mathapathi is a professional, she knows that discontinuing his seizure medication would result in a seizure. (ECF Nos. 1 at 5; 16 at 7). Martinez fails to support this allegation in his original complaint, questionnaire responses, or response to the Report. However, he does allege that Mathapathi stopped his seizure medication on or about May 24, 2018

and again on or about July 10, 2018. (*Id.*). The Report confirms his seizure medication was stopped on May 24, 2018, but not by Mathapathi. (ECF No. 21-1 at 75–76). Another nurse practitioner actually stopped his seizure medication after noting (1) Martinez had refused numerous lab work and clinical appointments; (2) a long history of subtherapeutic concentration of seizure medication in his blood; (3) no annotations of witnessed seizure activity; and (4) no recorded medical history of a seizure diagnosis. (*Id.*). The nurse practitioner diagnosed Martinez with "pseudoseizure" and stopped his seizure medication. (*Id.*). The Report indicates that this condition manifests in events that appear to be epileptic seizures, that treatment is supportive, and the goal is eventually weaning the patient off of seizure medication. (*Id.* at 5 n.1).

Martinez's pleadings do not state when his seizure medication was restarted. However, the Report shows it was restarted on June 12, 2018 after Martinez attended a chronic care clinic appointment. (*Id.* at 97–101). At this appointment, Mathapathi noted Martinez's complaint of having an unwitnessed and unreported seizure the week before. (*Id.* at 98). She also noted Martinez's history of noncompliance with treatment, including his refusal of lab work and clinical appointments. (*Id.*). Martinez's blood was drawn, labs were ordered, his seizure prescription was renewed, and his next blood draw was ordered for July 4, 2018. (*Id.*).

Martinez's blood was drawn on July 5, 2018 to assess the concentration of seizure medication in his blood, and the results showed a subtherapeutic level of 2.6 µg/mL, well below the low end of the therapeutic range of 4.0 µg/mL (*Id.* at 7, 110). Mathapathi reviewed the results and noted they were low and inconsistent with Martinez's stated medication compliance of ninety-two percent. (*Id.* at 111). She also noted Martinez's history of hoarding and trafficking medication and therefore discontinued his seizure medication on July 6, 2018. (*Id.*). Martinez does not contest Mathapathi's findings. (*See* ECF No. 24).

Martinez does, however, provide a reason for the low concentration of seizure medication in his blood. Shortly after his medication was discontinued in July, he asked that it be reinstated in a sick call request form. (ECF No. 21-1 at 113–15). He explained that due to an allergic reaction, which began on or about June 1, 2018, he stopped taking all medications and slowly reintroduced them to determine if any of his medications were the cause of his allergic reaction. (ECF Nos. 1 at 5; 21-1 at 113–15). However, during this timeframe, Martinez was not prescribed seizure medication because it was discontinued on May 24, 2018 and not restarted until June 12, 2018. Nevertheless, Martinez alleges Mathapathi knew he had only just restarted his seizure medications around the time his blood was drawn on July 5, 2018. (ECF No. 1 at 5). The Report confirms that Martinez complained of an allergic reaction that caused a rash. (ECF No. 21-1 at 80–81). He was seen six times for complaints about the rash, which was finally resolved by July 3, 2018. (ECF No. 21-1 at 80–81, 83–84, 87–88, 94–96, 102, and 108–09).

Martinez saw a nurse on July 10, 2018 in response to a sick call request to restart his seizure medication. (*Id.* at 116–18). The nurse noted that Martinez denied any seizure activity since his seizure medication was discontinued on July 6, 2018. (*Id.* at 117). On the same day, he also saw Mathapathi who refused to restart his seizure medication. (*Id.* at 119–21). During the examination, Martinez explained he had stopped taking his seizure medication to troubleshoot his rash and had flushed any untaken, but prescribed tablets. (*Id.* at 119). Mathapathi's notes state that Martinez became very angry and used vulgar curse words after she refused to restart his medication. (*Id.* at 120). Consequently, Martinez was escorted out of the exam room by security officers. (*Id.*).

On July 19, 2018, Martinez submitted another sick call request form, indicating he had two unwitnessed and unreported seizures on July 14, 2018 and July 16, 2018. (*Id.* at 125). He saw a nurse on July 20, 2018, who examined him and scheduled a follow-up referral with a registered

nurse. (*Id.* at 127). Three days later, he saw Cruz. (*Id.* at 128–30). Martinez's alleged symptoms at that time were dizziness, "floating vessels" in his eyes, and nausea. (ECF Nos. 15-1 at 4; 16 at 8). He alleges Cruz immediately stated she would not restart his seizure medication and refused to treat him. However, Cruz's notes indicate she examined Martinez, noting his steady gait, no dizziness, and absence of any neurological changes. (ECF No. 21-1 at 130). She indicated he spoke clearly without slurring any words and made eye contact during the examination. (*Id.*). Cruz advised Martinez to (1) notify medical staff if he no longer wanted to take his seizure medication, instead of disposing of them, (2) increase his fluids to prevent visual disturbances and dizziness, and (3) notify guards or medical staff immediately if he were to have another seizure. (*Id.*). When she asked Martinez why he did not notify guards or medical staff about the seizures, she noted he did not answer. (*Id.*). She also told him that his seizure medication would not be restarted due to his previous medical history. (*Id.*).

Although Martinez filed an amended complaint on October 10, 2018, answered a questionnaire on October 18, 2018, and responded to the Report on April 19, 2019, none of the pleadings mention Martinez's numerous consultations with mental health providers all indicating his satisfactory well-being. (*See id.* at 132, 134, 140, 151). Further, after making a request to see a nurse due to reports of weakness and nausea on October 9, 2018, (*id.* at 148), Martinez was promptly examined by a nurse and nurse practitioner. In the examination, Martinez did not allege any additional seizure symptoms. (*Id.* at 153–56).

After considering the pleadings, uncontradicted facts contained in the Report, and Response, the undersigned concludes that Martinez has failed to allege that Mathapathi and Cruz knew that stopping his seizure medications would lead to more seizures and that they failed to take reasonable steps to abate the risk.

Martinez's allegations that Mathapathi and Cruz acted deliberately indifferent to his serious medical needs is plainly rebutted by medical records substantiated in the Report. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). The Report, which does not contradict Martinez's pleadings, shows that he was seen numerous times for his alleged seizure symptoms, mental condition, high blood pressure, and allergic reaction. The fact that Mathapathi and Cruz did not reauthorize Martinez's seizure medication based upon self-reported seizures, when no substantiated report of a seizure had been made, does not show deliberate indifference. *See Haynes v. Assava*, No. 6:16CV1136, 2019 WL 945967, at *6 (E.D. Tex.), *adopted by*, No. 6:16CV1136, 2019 WL 937327 (E.D. Tex. Feb. 25, 2019) (finding no deliberate indifference when no active seizures had been reported and plaintiff's blood work showed subtherapeutic levels of seizure medication). Moreover, Martinez's assertion that Mathapathi and Cruz could have taken a more reasonable action by watching him take his medication is not persuasive because Martinez's assertion is merely a disagreement as to the appropriate administration of his medication, which does not rise to the level of deliberate indifference.

As for his claims against Mathapathi, Martinez concedes that Mathapathi restarted his seizure medication after his initial complaint of a self-reported seizure. The Report confirms this. Further, Mathapathi's decision to discontinue Martinez's seizure medication came after blood test results indicated he was not taking his seizure medication. This was a medical decision on Mathapathi's part that "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Moreover, Martinez does not make any other allegations against Mathapathi to show she was aware of any active seizure symptoms after his July 10, 2018 visit. Accordingly, Martinez's

deliberate indifference claim against Mathapathi should be dismissed.

As for Cruz, Martinez alleged that she did not examine him at all, but instead argued with him over reauthorizing his seizure medication. Martinez does not dispute that Cruz reviewed his medical history or that she told him to immediately inform medical staff about any future seizures. Further, the Report shows that Cruz asked Martinez why he did not immediately notify security or medical staff of his self-reported seizures, noting that Martinez did not respond. Cruz's reliance on objective medical records showing a subtherapeutic concentration of seizure medication in his blood versus self-reported claims of seizure symptoms is not deliberate indifference. At most, this evidence shows that Martinez disagreed with the medical treatment provided to him. Accordingly, Martinez's claim for deliberate indifference against Cruz should be dismissed.

## II.    Retaliation

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citing *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999)). "The inmate must allege more than his personal belief that he is the victim of retaliation," and conclusory allegations of retaliation are not sufficient to state a claim. *Jones*, 188 F.3d at 325. "To prevail on a retaliation claim, an inmate 'must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Bibbs*, 541 F.3d at 272–73 (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods*, 60 F.3d at 1166).

11

Martinez's retaliation claim against Mathapathi relates to her actions after he filed a grievance on May 22, 2018 concerning harassment over his cholesterol medication. (ECF No. 16 at 11). Martinez claims that after he filed the grievance, she retaliated against him by discontinuing his seizure medication. (*Id.*). But the Report shows that Mathapathi did not discontinue his seizure medication at the first instance. Further, Mathapathi restarted Martinez's seizure medication on June 12, 2018, after his initial complaint of seizure symptoms. This incongruent act rebuts Martinez's allegation that Mathapathi had any retaliatory intent. Moreover, Martinez has failed to allege how Mathapathi's decision not to restart his seizure medications when his blood tests showed subtherapeutic levels supports an intent to retaliate against him instead of the exercise of medical judgment. Accordingly, Martinez's retaliation claim against Mathapathi should be dismissed.

Against Cruz, Martinez alleges she refused to examine him because he made her "angry about the seizure medication issue." (ECF No. 16 at 12). Conclusory allegations like this one cannot substantiate a retaliation claim. *See Garcia v. Gonzalez*, 478 F. App'x 928, 929 (5th Cir. 2012) (per curiam) (prisoner failed to state a retaliation claim when he did not produce direct evidence of retaliatory motivation or a timeline of events by which motivation may be inferred, and when the claim was supported by only conclusory allegations of causation). Martinez has failed to allege a plausible retaliation claim here. He alleged no timeline of events from which the Court could infer Cruz's retaliatory motivation. Nor did he allege any self-reported seizures after Cruz refused to reauthorize his seizure medication. Thus, Martinez's retaliation claims against Cruz should be dismissed.

## III.    Dismissal with prejudice is appropriate

Because the Court has afforded Martinez the opportunity to state his best case by providing

responses to a Court-issued questionnaire, dismissal of this complaint and all claims stated in the complaint should be with prejudice. *Teel v. Collins*, 59 F.3d 1242 (5th Cir. 1995) (per curiam); *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994) ("Dismissal with prejudice [is] appropriate if the plaintiff has been given an opportunity to expound on the factual allegations by way of a *Watson* questionnaire . . . but does not assert any facts which would support an arguable claim."). Martinez has asserted his best case against the Defendants, and any amendment of his pleading would be futile. In such a situation, dismissal with prejudice is appropriate. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (affirming the district court's dismissal of plaintiff's claims without affording him discovery or an opportunity to amend his complaint).

## CONCLUSION

After considering the pleadings and the applicable law, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **DISMISS** the complaints **with prejudice** under 28 U.S.C. § 1915.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed June 6, 2019.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE